JUDGE JONES

08 CV 01587

UNITED STATES DISTRICT COURT{PRIVATE }
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DOOLIM CORP.,

              Plaintiff,

-against-

R DOLL LLC a/k/a RUBBER DOLL
and STEVEN OSHATZ,

              Defendants,
and

ROSENTHAL & ROSENTHAL, INC.,

              Stakeholder Defendant.
-----------------------------------------------------------x

08 CV

COMPLAINT



RECEIVED FEB 15 2008 U.S.D.C. S.D.N.Y. CASHIER

      Plaintiff, DOOLIM CORP., by its undersigned attorneys, Ballon Stoll Bader & Nadler, P.C., complaining of the Defendants, states and alleges as follows:

## PARTIES

    1.    At all relevant times, the Plaintiff, Doolim Corp. ("Doolim") was and still is a corporation duly organized and existing under and pursuant to the laws of Korea, a foreign nation. Doolim maintains its principal place of business at Doolim Bldg, 3rd Floor, #448-1, Seongnae-Dong, Gangdong-Ku, Seoul, Korea.

    2.    Doolim is engaged in the business of production of apparel goods and operates factories engaged in such production.

    3.    Upon information and belief, at all relevant times, the Defendant, R Doll LLC ("Rubber Doll") was and still is a New York limited liability company with its principle place of business located at 530 Seventh Avenue, New York, New York 10018. Upon information and belief, Rubber Doll is engaged in business as a manufacturer and wholesale distributor of apparel

under the trademarks and trade names *Rubber Doll*® and *RDoll*® (the "Marks").

4. Upon information and belief, Steven Oshatz ("Oshatz") is a natural person, residing at 51 Diamond Drive, Newtown, Pennsylvania. Oshatz is, upon information and belief, the managing member of Rubber Doll and the owner of the Marks and maintains an office for the transaction of his business at 530 Seventh Avenue, New York, New York 10018.

5. Upon information and belief, at all times herein relevant, Rosenthal & Rosenthal, Inc. ("Rosenthal") was and still is a New York corporation maintaining a principal place of business at 1370 Broadway, New York, New York. Upon information and belief, Rosenthal is engaged in the factoring and financing business whereby Rosenthal, among other things, finances or purchases its clients' receivables pursuant to written factoring agreements, financing agreements or other credit facilities.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of the Complaint pursuant to 28 USC §§1332, since the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between a citizens of the States of New York and Pennsylvania, as defendants and a citizen or subject of Korea, a foreign State, as plaintiff.

7. This Court also has jurisdiction over the subject matter of the Complaint pursuant to 28 USC §1331, since the action arises under a treaty of the United States, to wit, the United Nations Convention on the International Sale of Goods ("CISG"), to which both Korea and the United States are signatories.

8. This Court also has jurisdiction over the subject matter of the Complaint since the Plaintiff seeks declaratory relief (28 U.S.C.A. § 2201) with respect to (a) trademark rights to

which the provisions of the Lanham Act, 15 U.S.C.A. § 1051 *et seq.*, are applicable and (b) in the nature of Interpleader under 28 U.S.C.A. §1335, to which the adverse claimants are of diverse citizenship.

9.  A substantial portion of the events or omissions giving rise to Doolim's claims occurred in the Southern District of New York. Venue is therefore proper in this district pursuant to 28 U.S.C. § 1391.

## GENERALLY AS TO ALL COUNTS

10.  Upon information and belief, at or around or prior to April 2007, Rubber Doll entered into one or more factoring agreement, financing agreement or credit facility with Rosenthal whereby, among other things, Rosenthal purchased from Rubber Doll, and Rubber Doll sold and assigned to Rosenthal, all of Rubber Doll's rights to payment from its customers for goods sold and delivered by Rubber Doll, including the right to receive payment with respect to goods manufactured, sold and delivered by Doolim. In furtherance of such financing, Rosenthal also acquired a security interest in the Marks.

11.  Between in or around April 2007 and in or around October 2007, Rubber Doll prepared and transmitted to Doolim its purchase order numbers 100541, 100542, 100543, 100554, 100556, 100557, 100558, 100559, 100560, 100561, 100562, 100563, 100581, 100582, 100597, 100598, 100607, 100608, 100619, 100624, 100625,100626, 100627, 100653, 100654, 100655, 100656, 100657, 100658, 100659, 100660, 100662, 100663, 100664,100665, 100666, 100667, 100668, 100669, 100670, 100671, 100672, 100673, 100674 and 100675 pursuant to which Rubber Doll ordered to be produced to their specifications and delivered to Rubber Doll 495,968 garments comprised of approximately 460,000 *Rubber Doll*® and *RDoll*® branded

garments, and another 40,000 (approximately) private label garments (the "Garments"). The Garments are generally described as girls' and ladies' knit pants, knit tops and knit dresses.

12. Rubber Doll agreed to pay the aggregate LDP price of $1,985,782.23 for the Garments. Payments with respect to each shipment of Garments were due per the contracted terms "ROG 15 Days," or 15 days from receipt by Rubber Doll of those Garments.

13. Between on or about July 22, 2007 and on or about August 12, 2007, more than 77,500 Garments were manufactured and shipped by Doolim in accordance with Rubber Doll's orders, for which Rubber Doll was invoiced $381,026.10 under Doolim invoice numbers DM-257, DM-20070724, DM-20070803, DM-222/223 and DM-225/229. All of those Garments were received by Rubber Doll on dates between July 25, 2007 and September 7, 2007.

14. By September 22, 2007, Rubber Doll had not paid any portion of the $381,026.10 which was then due and owing to Doolim. Accordingly, Doolim required payment assurances prior to releasing any additional Garments to Rubber Doll.

15. Following receipt of adequate assurances from Rubber Doll, Doolim dispatched an additional 153,684 Garments on October 9, 2007, having the LDP invoice price of $638,782.00 (DM-308/307). In furtherance of the agreement, and as a condition for release of the Garments to Rubber Doll, Rubber Doll transferred to Doolim the sum of $200,000.00 for application against Invoice No. DM-308/307. Doolim also agreed to and did ship an additional 3,408 Garments to Rubber Doll on October 16 and November 7, 2007, all of which were received by Rubber Doll on or before November 20, 2007.

16. On November 25, 2007, in furtherance of their commitment to Rubber Doll, Doolim shipped an additional 13,735 Garments having the aggregate LDP value of $67,433.75.

17.     By December 1, 2007, Rubber Doll had not made any further payments on account of the Garments and there remained due $840,085.74 on account of Garments received by Rubber Doll and $67,433.75 for goods in transit. Therefore, Doolim called for additional assurances from Rubber Doll.

18.     On December 8, 2007, Doolim and Rubber Doll agreed, in writing, to a payment schedule requiring payments as follows:

| December 14, 2007 | $200,000 |
| December 28, 2007 | 142,000 |
| January 11, 2008 | 100,000 |
| January 25, 2008 | 88,000 |
| April 20, 2008 | 401,000 |

19.     In addition, the December 8, 2007 agreement required that Rubber Doll establish, by December 14, 2007, a documentary letter of credit in favor of Doolim, securing payment for Garments in production for Rubber Doll's customer Kmart, having an LDP value of approximately $700,000.

20.     By December 14, 2007, Rubber Doll had neither paid $200,000 nor established a letter of credit in Doolim's favor. Nevertheless, in good faith, Doolim continued production of goods for Rubber Doll while attempting to accommodate Rubber Doll's financial situation and obtain payment.

21.     By mid-January 2008, Rubber Doll had not yet paid any additional sums to Doolim and had not established a letter of credit in Doolim's favor. Doolim exercised its right to suspend its performance and to avoid its contracts with Rubber Doll.

22.     In addition to the Garments which were delivered to and received by Rubber Doll, (a) 13,735 Garments having an aggregate LDP value of $67,433.75 are held by Doolim in

California; (b) 38,450 Garments having an aggregate LDP value of $162,258.20 are completed and ready for shipment; and (c) production has been stopped with respect to 210,843 Garments having an aggregate LDP value of $716,004.44.

23. Doolim perfected its purchase money security interest in the Garments and their proceeds and duly notified Rosenthal of their lien.

FIRST COUNT
Goods Sold and Delivered
(Against Rubber Doll)

24. Between on or about July 22, 2007 and on or about December 1, 2007, Doolim sold and delivered to Rubber Doll goods manufactured to Rubber Doll's order having the aggregate agreed-upon and reasonable price of $1,107,519.59.

25. Rubber Doll paid $200,000.00 on account of the foregoing, leaving a balance due and owing in the amount of $907,519.59, no part of which has been paid although payment was demanded.

26. By virtue of the foregoing, Doolim has been damaged in the amount of $907,519.59 plus appropriate interest accrued thereon.

SECOND COUNT
Breach of Contracts for the International Sale of Goods
(Against Rubber Doll)

27. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 25 of this Complaint as if fully set forth herein at length.

28. Between in or around April 2007 and in or around October 2007, Doolim and Rubber Doll entered into a series of contracts for the international sale of goods under CISG (the "Contracts"), which called for the manufacture for and sale and delivery to Rubber Doll by

Doolim of approximately 460,000 *Rubber Doll®* and *RDoll®* branded garments, and approximately 40,000 private label garments, consisting of girls' and ladies' knit pants, knit tops and knit dresses and for payment by Rubber Doll of the aggregate Contract price of $1,985,782.23, with payment terms R.O.G. 15 days.

29. Doolim, as seller, duly performed all of its obligations to Rubber Doll, as buyer, under the Contracts.

30. Rubber Doll breached their contractual obligations to Doolim under CISG in that they wholly failed to pay the sum of $840,085.84 to Doolim on account of goods delivered and accepted.

31. Rubber Doll's failure to pay the foregoing sums to Doolim constitutes a fundamental breach of the Contracts.

32. Accordingly, Doolim became entitled to exercise its rights and remedies on account of Rubber Doll's breach including, without limitation, (a) requiring adequate assurance of performance, (b) holding all completed Garments, (c) cessation of all work in process with respect to the Garments, (d) avoidance of the Contracts and (e) recovery of damages.

33. By virtue of the foregoing breaches of the Contracts, Doolim is entitled to recover the outstanding Contract price of $1,785,852.23 or such damages as are determined and assessed at trial.

### THIRD COUNT
Declaratory Judgment as to the Disposition of Branded Garments
(28 U.S.C. § 2201 and 15 U.S.C. §1051 *et seq.*)

34. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 25 and 28 through 32 of this Complaint as if fully set forth herein at length.

35. Doolim is in possession of Garments which it duly manufactured for the account of Rubber Doll but for which payment was not received.

36. Doolim seeks to mitigate its damages by selling the Garments and applying the proceeds of the sale to Rubber Doll's account. However, doing so may violate the property rights of Oshatz, Rubber Doll and/or Rosenthal in and to the Mark.

37. A justiciable controversy exists between the Doolim and the defendants concerning Doolim's rights and obligations with respect to sale of the *Rubber Doll*® and *RDoll*® branded Garments.

38. Doolim seeks a Judgment declaring the parties' respective rights and obligations in and to the *Rubber Doll*® and *RDoll*® branded Garments.

## FOURTH COUNT
Declaratory Judgment as to Stakeholder Property
(28 U.S.C.A. §2201 and 28 U.S.C.A. §1335)

39. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 25, 28 through 32 and 35 through 37 of this Complaint as if fully set forth herein at length.

40. Upon information and belief, Rosenthal is in possession of funds and outstanding receivables in which Rubber Doll has an interest net of Rosenthal's interest therein (the "Collateral").

41. The Collateral consists wholly of proceeds with respect to the Garments.

42. Doolim has a perfected purchase money security interest in the Collateral.

43. Doolim's security interest is senior to any other security interests in and to the Collateral except to the extent of Rosenthal's possessory interest therein.

44. Upon information and belief, Rubber Doll and others claim entitlement to the Collateral.

45. Rosenthal has declared that it will hold, and will not disburse any of the Collateral absent an Order from a Court of competent jurisdiction declaring the interests of all parties claiming entitlement thereto.

46. A justiciable controversy exists between the Doolim and the defendants concerning Doolim's rights in and to the Collateral.

47. Doolim is entitled to an Order determining and declaring those rights and directing that all of the Collateral be delivered to Doolim.

WHEREFORE, Doolim demands judgment in its favor and against the Defendants as follows:

(a) On the First Count, awarding Doolim monetary damages as against Rubber Doll in the amount of $907,519.59 plus appropriate interest accrued thereon;

(b) On the Second Count, awarding Doolim monetary damages as against Rubber Doll in the amount of $1,785,852.23 or in such other amounts as are determined and assessed at trial, together with appropriate interest thereon;

(c) On the Third Count, an Order and Judgment declaring the parties' respective rights and obligations in and to the *Rubber Doll*® and *RDoll*® branded Garments in the possession of Doolim;

(d) On the Fourth Count, an Order determining and declaring Doolim's rights in an to the Collateral and requiring delivery of the Collateral to Doolim; and

(e) Awarding Doolim such other and further relief as to the Court may appear just and

proper, including recovery of costs and attorneys' fees.

Dated:    New York, New York
            February 15, 2008

                          BALLON STOLL BADER & NADLER, PC
                          Attorneys for Plaintiff

                          By: _____
                             Susan Schneiderman (SS9840)
                          1450 Broadway
                          New York, New York 10018
                          212-575-7900
                          Fax: 212-764-5060
                          sschneiderman@ballonstoll.com